**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CCC OF DC LIMITED COMPANY**,<br><br>*Plaintiff*,<br><br>v.<br><br>**FEDERATION OF KINGS POINT ASSOCIATIONS, INC.**,<br><br>*Defendant*. | Civil Action No. 25-2737 (TSC) |

**MEMORANDUM OPINION**

Plaintiff CCC of DC Ltd. Co. ("CCC") brings breach of contract and misappropriation of trade secret claims against the Federation of Kings Point Associations, Inc. ("Kings Point"). Compl. ¶¶ 46–72, ECF No. 1-1. Kings Point has moved to dismiss. Mot. to Dismiss, ECF No. 12. For the following reasons, the motion will be GRANTED.

## I. BACKGROUND

This case arises from the alleged theft of a trade secret. CCC claims that in 2019, its owner, Austin Setzer, devised a novel business model for condominium owners' associations to generate millions of dollars in profits. Compl. ¶¶ 3, 8; Opp'n at 2, ECF No.13 (citation omitted). The details of the model are not relevant here, but according to the Complaint, Setzer sought to monetize his business strategy and reached out to Kings Point, an umbrella association for many condominium owners' associations in Sun City Center, Florida. *See* Compl. ¶ 15. Proceeding by way of an entity called Founders Choice, LLC, Setzer apparently entered into several non-disclosure agreements with Kings Point and members of its board of directors (the "2019 NDAs") to protect the confidentiality of his idea during negotiations. *See id.* ¶ 16; 2019 NDAs at 2–13, Ex.

1, ECF No. 1-2. It is unclear, however, whether any meeting even occurred before the Covid-19 pandemic stalled progress. Compl. ¶ 18.

According to the Complaint, Setzer re-engaged Kings Point in 2023. *Id.* ¶ 19. Proceeding under a new entity, CCC of DC Ltd. Co., he arranged meetings with Kings Point to propose a joint enterprise based on his business model. *See id.* ¶¶ 17–27. In advance of the meetings, Setzer emailed a copy of a non-disclosure agreement (the "2023 NDA") to a company director. *See id.* ¶ 22; 2023 NDA at 1–6, Ex. 2, ECF No. 1-3. The director informed Setzer that everyone who would be in attendance had signed the NDA. *See* Compl. ¶ 24. Subsequently, in February 2024, Setzer met with board members and directors of Kings Point, where he discussed his proprietary business model. *Id.* ¶ 30. Following the meetings, the parties negotiated until June 6, 2024, when they agreed to form a joint venture. *Id.* ¶ 34. The Complaint states that shortly thereafter, however, Kings Point reneged on its commitments. *Id.* ¶¶ 36–38. By the end of the year, it had contacted another company for a venture based on the same business model that Setzer had presented. *Id.* ¶ 40.

CCC sued Kings Point in this court in August 2025, seeking over $16 million in damages. *See id.* ¶ 73. It claims that Kings Point breached the 2019 and 2023 NDAs by disclosing confidential information to a third party, *id.* ¶¶ 46–50, failed to satisfy its obligations under the agreement formed with CCC on June 6, 2024, *id.* ¶¶ 51–54, and violated the federal Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.* ("DTSA"), *id.* ¶¶ 55–63, and the Florida Uniform Trade Secrets Act, Fla. Stat. §§ 688.001–688.009 (2026) ("UTSA"), *id.* ¶¶ 64–72. Kings Point moved to dismiss under Federal Rule 12(b)(1) for lack of subject-matter jurisdiction, Rule 12(b)(2) for lack of personal jurisdiction, Rule 12(b)(3) for improper venue, and Rule 12(b)(6) for failure to

state a claim. *See* Mot. to Dismiss. The court will deny Kings Point's Rule 12(b)(1) motion but will grant its Rule 12(b)(2) motion and declines to reach the other two motions.

## II. ANALYSIS

### A. Rule 12(b)(1) Motion to Dismiss

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). A Rule 12(b)(1) motion to dismiss tests, among other things, whether Congress has granted the court power to adjudicate a given dispute. *See Citizens for Resp. & Ethics in Wash. v. FEC*, 363 F. Supp. 3d 33, 39 (D.D.C. 2018). The plaintiff bears the burden of establishing subject-matter jurisdiction. *See Kokkonen*, 511 U.S. at 377 (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182–183 (1936)). But because lack of subject-matter jurisdiction is a structural barrier to a federal court's ability to resolve a case, the "[e]xercise of the judicial power" begets an independent judicial "obligation to ensure that" subject-matter jurisdiction exists. *Bronner ex rel. Am. Stud. Ass'n v. Duggan*, 962 F.3d 596, 602 (D.C. Cir. 2020) (cleaned up) (quoting *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011)).

Congress has granted federal courts jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Supreme Court has long held that "the question whether a claim 'arises under' federal law must be determined by reference to the 'well-pleaded complaint.'" *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 9–10 (1983)). Under that test, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 112–113 (1936)). "Most

directly, a case arises under federal law when federal law creates the cause of action asserted." *D.C. Ass'n of Chartered Pub. Schs. v. District of Columbia*, 930 F.3d 487, 491 (D.C. Cir. 2019) (internal quotation marks omitted) (quoting *Gunn*, 568 U.S. at 257).

CCC's claim under the DTSA—invoked in count 3 of its Complaint—comfortably meets this standard. *See* Compl. ¶¶ 55–63. Enacted in 2016, the federal DTSA creates a private civil right of action for owners of a "trade secret that is misappropriated" if the trade secret is "related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). That makes the claim like "the vast majority of cases brought under the general federal-question jurisdiction of the federal courts." *Merrell Dow*, 478 U.S. at 808.

Kings Point argues that the case should nonetheless be dismissed because CCC has not "plausibly allege[d] a claim under the DTSA." Mot. to Dismiss at 9. But that argument confuses the standards for a Rule 12(b)(6) motion to dismiss with those concerning a Rule 12(b)(1) motion. "It is firmly established . . . that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the courts' statutory or constitutional *power* to adjudicate the case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). Jurisdiction is typically not defeated "by the possibility that the [plaintiff's] averments might fail to state a cause of action on which" he "could actually recover." *Id.* (internal quotation marks omitted) (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)). Rather, "[d]ismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of th[e Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Id.* (quoting *Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 661, 666 (1974)).

CCC's DTSA claim is not "frivolous or immaterial" enough to warrant dismissal for lack of subject-matter jurisdiction. *Id.* This court is not aware of any Supreme Court or Circuit decision—nor can Kings Point identify any—that categorically forecloses CCC's claim that Setzer's business model was a trade secret misappropriated by Kings Point within the meaning of 18 U.S.C. § 1836(b)(1). What is more, Kings Point's contentions that CCC "failed to allege a protectable trade secret" that implicates "interstate or foreign commerce" and omitted to "separate the alleged trade secret from public knowledge," Reply at 2–3 (quotation omitted), do not demonstrate that CCC's claim is frivolous, because "the question whether the allegations the plaintiff makes entitle him to relief" is one for resolution under Rule 12(b)(6), not Rule 12(b)(1), *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 254 (2010) (citation omitted). Accordingly, the court declines to dismiss CCC's DTSA claim under Rule 12(b)(1).

To be sure, the remaining counts in the Complaint do not involve federal causes of action. Counts one and two are common law breach of contract claims, *see* Compl. ¶¶ 46–54, while count four seeks to recover under the Florida UTSA, *see id.* ¶¶ 64–72. This court has "an independent obligation to determine whether subject-matter jurisdiction exists" over those claims, "even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)); *id.* ("[B]ecause it involves a court's power to hear a case," subject-matter jurisdiction "can never be forfeited or waived." (internal quotation marks omitted) (quoting *United States v. Cotton*, 535 U.S. 625, 630 (2002))).

The supplemental jurisdiction statute, 28 U.S.C. § 1367, provides this court subject-matter jurisdiction over the non-federal claims as well. Under the supplemental jurisdiction statute, a court has jurisdiction over non-federal claims when a federal claim is before it if the non-federal claims "are so related" to the federal claim "that they form part of the same case or controversy."

*See id.* § 1367(a). That requirement is met here because the DTSA and non-federal claims all arise from a "common nucleus of operative facts." *Women Prisoners of D.C. Dep't of Corr. v. District of Columbia*, 93 F.3d 910, 921 (D.C. Cir. 1996) (internal quotations omitted); *see* 28 U.S.C. § 1367(a). Like the federal claim, the state law claims concern Kings Point's alleged disclosure of confidential information—Setzer's business model—and misappropriation of its value. *See* Compl. ¶¶ 48, 71. The claims also involve Kings Point's alleged breach of its agreements with CCC in the process of disclosing the confidential information, the key circumstance that gives rise to the DTSA claim. *See id.* ¶¶ 49–53.

Given that the claims arise from a common nucleus of operative facts, the court has "discretion[] . . . to retain or dismiss" the non-federal claims. *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 423 n.4 (D.C. Cir. 2005); *see* 28 U.S.C. § 1367(c). The court finds no reason to decline jurisdiction here. The claims do not appear to "raise[] a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1). Nor do they "substantially predominate[] over" the DTSA claim. *Id.* § 1367(c)(2). Like the DTSA, the UTSA prohibits misappropriation of trade secrets, and the two breach of contract claims require applying the same contract law principles. Finally, judicial economy would not be advanced by dismissing the other causes of action. *See id.* § 1367(c)(3). Accordingly, the court has subject-matter jurisdiction over this case.

**B. Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction**

The Due Process Clause requires courts to have "power over the parties before it (personal jurisdiction) before it can resolve a case." *Fuld v. Pal. Liberation Org.*, 606 U.S. 1, 11 (2025) (cleaned up) (quoting *Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 95 (2017)). But unlike subject-matter jurisdiction, "the requirement that the court have personal jurisdiction over a defendant is a personal right that a defendant can choose to assert or not." *Shatsky v. Pal.*

*Liberation Org.*, 955 F.3d 1016, 1031 (D.C. Cir. 2020) (quoting *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702–704 (1982)). "That means that a personal jurisdiction defense is both forfeitable and waivable." *Id.* at 1031–32 (citing *Sickle v. Torres Advanced Enter. Sols., LLC*, 884 F.3d 338, 344 (D.C. Cir. 2018)). A defendant may waive a personal jurisdiction defense by "consent[ing] to the personal jurisdiction of the court," for example by signing a contract which requires certain disputes to be resolved under "the jurisdiction of a given court." *Compagnie des Bauxites*, 456 U.S. at 703–04 (quoting *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964)). Such an action "amount[s] to a legal submission to the jurisdiction of the court." *Id.* at 704–05.

The plaintiff bears "the burden of establishing the court's personal jurisdiction over a defendant." *Mills v. Anadolu Agency NA, Inc.*, 105 F.4th 388, 395 (D.C. Cir. 2024) (citing *Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883, 888 (D.C. Cir. 2021)). A plaintiff must make "a prima facie showing of jurisdiction" to satisfy that burden. *Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005). To that end, a plaintiff is not limited to admissible evidence but may also rely on "pleadings, bolstered by such affidavits and other written materials" as he can obtain. *Id.* at 7 (footnote omitted). But a plaintiff cannot carry the burden of establishing personal jurisdiction by proffering "[c]onclusory statements." *First Chi. Int'l v. United Exch. Co., Ltd.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988).

CCC argues that this court has jurisdiction because the 2023 NDA provides that any action "seeking to enforce any provision of" the contract "shall be brought in the courts of The District of Columbia, Washington DC, or, if it has or can acquire jurisdiction, in the United States District Court having jurisdiction over transactions occurring in Washington DC." 2023 NDA § VII.F; *see* Opp'n at 12. The 2023 NDA further provides that "each of the parties hereto consents to the

exclusive jurisdiction of such courts." 2023 NDA § VII.F. CCC contends that Kings Point accordingly consented to this court's jurisdiction in the 2023 NDA. *See* Opp'n at 10–11.

Even if CCC were correct, it is unclear whether Kings Point consented to litigate all four of CCC's claims before this court. But in any event, CCC's argument fails because CCC has not shown that Kings Point actually agreed to the 2023 NDA. The six-page contract, a copy of which is attached to the Complaint, is devoid of any reference to Kings Point or its directors. *See* 2023 NDA at 1–6. The first page contains an unfilled blank in the space reserved for the name of a Kings Point representative. *See id.* at 1. Likewise, the signature page does not identify Kings Point as a contracting party—it simply contains the text "[The Company]" as a placeholder. *Id.* at 6. Indeed, the signature block is completely bare. The fields identifying the name and title of the individual signing on the company's behalf are blank. *Id.* The contract is not even signed by Setzer. *Id.* For all practical purposes, the attached document is an unexecuted copy of a contract—not a contract itself.

A comparison of the 2023 NDA with the 2019 NDAs is instructive. Unlike the 2023 NDA, the 2019 NDAs all contain the signatures of the individuals acting on Kings Point's behalf. *See* 2019 NDAs at 2–13. Unlike the 2023 NDA, the 2019 NDAs all print "Kings Point" in bold capitals on the front page. *See id.* And unlike the 2023 NDA, the 2019 NDAs are all signed by Setzer. *See id.* Consequently, CCC cannot attach a blank form contract to its Complaint and credibly suggest—on the strength of unsupported allegations—that the board of Kings Point signed the document in the presence of witnesses prior to the meeting in 2024, and that Kings Point is now withholding the signed contracts, *see* Opp'n at 17. Nor can CCC seriously claim that because the 2023 NDA agreement is intended to bind "617 FL corporation[s]," and Kings Point is a Chapter

617 Not for Profit Corporation under Florida law, the 2023 NDA references Kings Point, *see id.* at 4. That syllogism reads far too much into generic text. And in any event, it proves too much.

Failing to produce a signed contract, CCC argues that "Kings Point's conduct proves that it assented to" the terms of the 2023 NDA. *Id.* at 17. According to CCC, a Kings Point director reassured Setzer prior to the 2024 meeting that "everyone at Kings Point who would learn CCC's trade secrets [had] signed the 2023 NDA." *Id.* at 18 (citation omitted). CCC also alleges that the same director "reminded all of the officers and [other] directors of their obligations to keep" secret information about Setzer's business idea. *Id.* (citation omitted). CCC further claims that the 2024 meeting "excluded the volunteers on the [Kings Point] insurance committee who did not agree to the 2023 NDA." *Id.* at 18 (emphases omitted) (citation omitted). CCC contends that taken together, these actions show that Kings Point manifested "its intent to be bound by the 2023 NDA." *Id.*

It is true "a signed writing is not essential to the formation of a contract" under District of Columbia law. *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1301 (D.C. Cir. 2002) (quoting *Davis v. Winfield*, 664 A.2d 836, 838 (D.C. 1995)). Although mutual assent is "most clearly evidenced by the terms of a signed agreement," assent can also be shown "by the conduct of the parties" at the time the contract was formed if the conduct "objectively manifest[s]" a party's intent "to be bound contractually." *Apprio, Inc. v. Zaccari*, 104 F.4th 897, 906–07 (D.C. Cir. 2024) (cleaned up) (first quoting *Davis*, 664 A.2d at 838; and then quoting *Dyer v. Bilaal*, 983 A.2d 349, 357 (D.C. 2009)). But even assuming the conduct CCC has alleged could, in theory, establish that Kings Point agreed to the 2023 NDA, CCC has failed to make a *prima facie* showing that the conduct actually occurred. All CCC offers are unverified allegations in its Complaint. *See* Opp'n at 18. It has not submitted any affidavits or declarations. Nor does the record contain any proof

that Setzer even emailed the 2023 NDA to Kings Point. Such "bare allegations" cannot "constitute the *prima facie* case for jurisdiction." *Fawzi v. Al Jazeera Media Network*, 273 F. Supp. 3d 182, 186 (D.D.C. 2017) (cleaned up) (quoting *Livnat v. Palestinian Auth.*, 851 F.3d 45, 57 (D.C. Cir. 2017)).[1]

For the same reason, CCC's argument that the 2023 NDA is enforceable under estoppel principles fails to establish this court's jurisdiction over Kings Point, *see* Opp'n at 18. Under the doctrine of equitable estoppel, "a party with full knowledge of the facts, which accepts the benefits of a transaction, contract, statute, regulation, or order may not subsequently take an inconsistent position to avoid the corresponding obligations or effects." *Fairman v. District of Columbia*, 934 A.2d 438, 443 (D.C. 2007) (cleaned up) (quoting *Thoubboron v. Ford Motor Co.*, 809 A.2d 1204, 1212 (D.C. 2002)). CCC asserts that "Kings Point, with notice of its terms, accepted the benefits bestowed upon it in the 2023 NDA" but failed to satisfy its obligations under it. Opp'n at 18. And again, CCC relies only on unverified allegations in its Complaint. *Id.* So even if the 2023 NDA could in theory be enforced under principles of estoppel, *see Hartenstine v. Uber Techs., Inc.*, 753 F. Supp. 3d 1, 4–5 (D.D.C. 2024), CCC has provided "no concrete evidence" to "make a *prima facie* showing" that the NDA is actually enforceable, *First Chi. Int'l*, 836 F.2d at 1378 (citations omitted).

Finally, CCC argues that the 2019 NDAs continue to bind Kings Point, but that argument likewise fails to establish this court's jurisdiction, *see* Opp'n at 16. As CCC itself concedes, the 2019 NDAs do not contain any provision requiring Kings Point to submit to the jurisdiction of District of Columbia courts. *See* Opp'n at 12; *see also* 2019 NDAs at 2–13. Thus, even if the

[1] The court applies District of Columbia contract law because the 2023 NDA provides that "the laws of the District of Columbia" shall govern it. *See* 2023 NDA§ VII.F.

2019 NDAs were enforceable, they could not support this court's jurisdiction. Because CCC has offered no evidence to suggest that Kings Point consented to suit in this court, the court does not have personal jurisdiction over Kings Point. Accordingly, the court will dismiss the case under Rule 12(b)(2). The court therefore need not reach Kings Point's motions under Rules 12(b)(3) and 12(b)(6).

## III. CONCLUSION

For the foregoing reasons, Kings Point's Motion to Dismiss is GRANTED. A separate Order accompanies this Memorandum Opinion.

Date: September 21, 2026

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge